IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NIGEL DEDIEECE CARTER**, *et al.*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 23-CV-0798** |
| | : | |
| **CHILD & YOUTH SERVICES,** | : | |
| Defendants. | : | |

**MEMORANDUM**

**PEREZ, J.**                                                                                                                **January 5th, 2024**

*Pro se* Plaintiffs Nigel Dedieece Carter ("Carter") and Lacieya Rosalee Stevens ("Stevens") initiated this civil action by filing a Complaint (ECF No. 1 "Compl."), on behalf of themselves and their minor son, L.K.C.,[1] against Child & Youth Services ("CYS") and Delaware County, Pennsylvania. Carter seeks leave to proceed *in forma pauperis*.[2] For the following reasons, Stevens will be dismissed without prejudice as a named Plaintiff in this case, and all claims asserted on her behalf and on behalf of L.K.C. will be dismissed without prejudice. The

---

[1] Carter included his minor son's full name in his Complaint (ECF No. 1). Federal Rule of Civil Procedure 5.2 prohibits litigants from submitting documents that contain personal information, including, *inter alia*, the names of persons under the age of 18, who are to be identified by initials only. The Clerk of Court will be directed to mark these documents as case participant view only. Carter is directed to refrain from including the minor's full name in future filings.

[2] Because Carter was incarcerated at the time he filed the Complaint in this matter, the Prison Litigation Reform Act ("PLRA") applies, even though Carter has since been released from imprisonment. *See, e.g., In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997) ("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."). Thus, Carter was required to pay an initial partial filing fee, which was calculated based upon the financial information in the six-month account statement that he provided to the Court. *See Drayer v. Att'y Gen. of Del.*, 81 F. App'x 429, 431 (3d Cir. 2003) (*per curiam*). To avoid paying the remainder of the filing fee, Carter was advised that he could file a new motion to proceed *in forma pauperis* that informs the Court how he supports himself after his release from incarceration. (*See* ECF Nos. 13.) Carter paid the partial filing fee (*see* ECF No. 14) and submitted a new motion to proceed *in forma pauperis* (*see* ECF No. 15).

Court will grant Carter leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Carter will be given an opportunity to file an amended complaint with respect to his claims against Delaware County.

I.    FACTUAL ALLEGATIONS

On January 29, 2021, Carter and Stevens discovered their son, L.K.C., in his crib with shortness of breath. (Compl. at 5.)[3] They called for a medic from Delaware County Emergency, and L.K.C. was rushed to Crozier Hospital in Chester, Pennsylvania. (*Id.*) Following L.K.C.'s arrival at Crozier, L.K.C.'s aunt, Yesene Pitts, and Stevens allegedly witnessed "a medical team fail to insert an IV by drilling several holes in [L.K.C.'s] body." (*Id.*) According to the Complaint, L.K.C. tested positive for COVID-19, suffered cardiac arrest, and experienced a "significant amount of blood loss" that caused him to be hospitalized for several weeks at Nemours Hospital in Delaware. (*Id.*)

While at Nemours, parents Carter and Stevens allegedly "informed the doctors that their failure to produce breast milk and fears of infant milk recall reports lead [sic] them to feeding [L.K.C.] the Bromide Formula" with natural ingredients such as "organic hemp seeds, organic dates, organic coconut water and alkaline water." (*Id.*) Carter asserts that the "doctors and Delaware County [and] Pennsylvania detectives deemed [L.K.C.]'s hospitalization 'unintentional.'" (*Id.*) Carter asserts that CYS disregarded these facts and "compelled [L.K.C.]'s family to receive their services based on false allegations of 'seaweed milk'" being fed to L.K.C. (*Id.* at 5-6.) Carter avers that the CYS investigation, which consisted of "weekly harassment" for a period of nine months, ruined the parents' reputations and their relationship

---

[3] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

with each other and family. (*Id.*) Carter also contends that CYS falsely alleged that L.K.C. was "malnourished" even though his "doctor appointment records" reflected that he was healthy and thriving. (*Id.* at 5.)

Plaintiffs assert that CYS of Delaware County's "disregard of the facts, false allegations, and abuse of power" restricted the rights of parents "in violation of 23 Pa.C.S. § 6302" and did not assure L.K.C.'s family a fair hearing in violation of 42 Pa.C.S. § 6301(b)(4). (*Id.* at 6.) The Complaint further alleges that CYS's "failure to explain that it had no legal authority" to compel services "violated 23 Pa.C.S. § 6370" and its refusal to amend the allegations that "seaweed milk" was fed to L.K.C. "violated Pa.R.J.C.P. 1334." (*Id.* at 6-7.) Plaintiffs assert that CYS of Delaware County's "disregard of the facts, false allegations, and abuse of power [also] violated" the following rights guaranteed under the United States Constitution: (1) their First Amendment "right to 'the free exercise' of their religious belief in parenting alone as mother and father;" (2) their Fourth Amendment "right 'to be secure in their persons, houses' against unreasonable searches and (CYS threats) of seizures (of [L.K.C.]);" and (3) their Fourteenth Amendment "right to not 'deny any person within its jurisdiction the equal protection of the laws.'" (*Id.* at 10.) Plaintiffs also refer to the Seventh and Ninth Amendments of the United States Constitution and various sections of Articles I and III of the Pennsylvania Constitution. (*Id.* at 7-10.)

Plaintiffs seek an unspecified amount of damages for "ruined reputations, ruined relationship[s] with each other and family" as well as monetary relief for L.K.C.'s removal which resulted in a "broken home," Stevens's post-partum and PTSD, Carter's PTSD, the loss of their apartment, and for "legal and lawyer fees spent for 9 months." (*Id.* at 6.) Monetary relief is also sought because "co-parenting checks [will be required] every month until [L.K.C.] is 18 year[s] old." (*Id.*) Carter requests that "services" be stopped. (*Id.*)

## II. STANDARD OF REVIEW

The Court grants Carter leave to proceed *in forma pauperis* because it appears that he is incapable of paying the remaining fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, the Complaint fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Carter is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

### A. Claims on Behalf of Lacieya Rosalee Stevens

The Complaint in this matter was signed by Plaintiff Carter but was submitted without a handwritten signature by Plaintiff Stevens. (Compl. at 2-3, 11.) Rule 11(a) of the Federal Rules of Civil Procedure provides that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). As of the filing of the Complaint, Stevens also

4

had failed to pay the fees necessary to commence a civil action in this court or file an application to proceed *in forma pauperis*.

Consequently, by Order dated April 28, 2023, the Court granted Stevens a thirty-day opportunity to cure both deficiencies. (*See* ECF No. 7.) The Court directed Stevens to correct the signature deficiency by signing a Declaration, and the Clerk of Court furnished Stevens with a blank copy of the Court's form application to proceed *in forma pauperis*. (*Id.*) Stevens was advised that if she failed to complete and return the Declaration form with an original signature within the thirty-day period, or if she failed to either (1) pay $402 (comprising the $350 filing fee and $52 administrative fee) to the Clerk of Court, or (2) file a motion to proceed *in forma pauperis* within the thirty-day period, her claims would be dismissed without further notice for failure to prosecute. (*Id.*) Stevens did not return the Declaration form, and she has not paid the fees necessary to commence a civil action or filed an application to proceed *in forma pauperis*. Because Stevens has failed to prosecute her claims by complying with the Court's Order, she will be dismissed without prejudice as a named Plaintiff in this case.

### B.    Claims on Behalf of L.K.C.

Carter asserts that he is the father of L.K.C., and he identifies him as one of the Plaintiffs in this case. (Compl. at 2-3.)  However, Carter may not represent his son in this civil action or bring claims of his behalf.  Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts.  Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).  However, a non-attorney

cannot represent other parties in federal court.  *See Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent herself or himself *pro se*, a non-attorney may not represent other parties in federal court."); *Gunn v. Credit Suisse Grp. AG*, 610 F. App'x 155, 157 (3d Cir. 2015) (*per curiam*) ("The federal courts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity.") (internal citation and quotation omitted).  *See also Smith v. Northampton Cnty.*, No. 22-3788, 2023 WL 1767765, at *4 (E.D. Pa. Feb. 3, 2023) ("The Third Circuit has held, unequivocally, that a parent who is not an attorney must be represented by legal counsel in bringing an action on behalf of his or her minor children." (citing *Osie-Afriyie*, 937 F.3d at 878.))

Moreover, "a plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim.  *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted.).  Courts have found specifically that parents lack standing to bring claims for their minor children.  *See Chang v. Dep't of Servs. for Child., Youth, & their Fams., Div. of Fam. Servs.*, 790 F. App'x 435, 437-38 (3d Cir. 2019) (*per curiam*) (father lacked standing to address children's claims on appeal); *Jackson v. Bolandi*, No. 18-17484, 2020 WL 255974, at *5 (D.N.J. Jan. 17, 2020) ("Here, *pro se* Plaintiff does not have standing to assert any claims on behalf of her daughter.").  Accordingly, all claims asserted on behalf of L.K.C. will be dismissed without prejudice for lack of standing.[4]

---

[4] The Court's April 28, 2023 Order also gave Carter an opportunity to obtain counsel on behalf of his son.  (*See* ECF No. 7.)  However, no attorney has entered an appearance in this case.

### C. Claims on Behalf of Nigel Dedieece Carter

Carter alleges that CYS "compelled [L.K.C.]'s family" to receive "services based on false allegations of 'seaweed milk'" following L.K.C.'s emergency room visit on January 29, 2021. (Compl. at 5-6.) Carter also asserts that the CYS investigation, which consisted of "weekly harassment" for a period of nine months, ruined his reputation and relationship with other family members. (*Id.*) It is apparent from the Complaint that Carter intends to pursue civil rights claims pursuant to § 1983. (*Id.* at 2, 10.) The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the federal constitutional claims (*see* Compl. at 10), Carter alleges that his rights under the Pennsylvania Constitution and various Pennsylvania statutes have been violated. (*Id.* at 6-9.) Carter's claims for damages under the Pennsylvania Constitution are not plausible because "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution." *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*). Moreover, "[s]ection 1983 does not provide a cause of action for violations of state statutes, and a state statute cannot create a constitutional right." *Smith v. St. Luke's Hosp. Univ. Healthcare Network Anderson Campus*, No. 22-1478, 2023 WL 1767478, at *8 (E.D. Pa. Feb. 3, 2023) (whether defendants failed to adhere to Pennsylvania statutes and regulations is irrelevant to the court's analysis of § 1983 liability) (citing *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990), *cert. denied,* 501 U.S. 1218 (1991)), *see also Benn v. Universal Health Sys., Inc.,* 371 F.3d 165, 174 (3d Cir. 2004).

1.     **Claims Against Child & Youth Services**

Carter has sued both Delaware County and the CYS of Delaware County. (Compl. at 2-4.)  The United States Court of Appeals for the Third Circuit, however, has held that a municipal agency cannot be sued alongside a municipality when the municipal agency is merely an administrative arm of the municipality itself.  *See, e.g.*, *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003) (for purposes of § 1983 liability, a municipality and a municipal agency are a single entity) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997)).  Because CYS is an administrative arm of Delaware County, all claims against CYS as any sort of distinct or independent entity are dismissed with prejudice, and the Court will dismiss CYS as a defendant in this action.  *See Walthour v. Child & Youth Servs.,* 728 F. Supp. 2d 628, 640-41 (E.D. Pa. 2010) (the Delaware County Department of Children and Youth Services does not have a separate corporate existence from the county and is, therefore, not an entity capable of being sued under § 1983) (citing *Padilla v. Twp. of Cherry Hill,* 110 Fed. Appx. 272, 278 (3d Cir. 2004)); *see also Gajarov v. Allegheny Cnty. Off. of Child., Youth, & Families*, No. 20-1017, 2021 WL 140842, at *5 (W.D. Pa. Jan. 15, 2021); *Kane v. Chester Cnty. Dep't of Children, Youth and Families*, 10 F. Supp. 3d 671, 686 (E.D. Pa. 2014) (dismissing plaintiff's federal and state law claims against Chester County's department of children and youth services because it did not have a legal existence separate from Chester County); *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 395 (E.D. Pa. 2012) ("It is well established that arms of local municipalities – such as county departments and agencies like [the Montgomery County Office of Children and Youth] – do not maintain an existence independent from the municipality."); *Dunsmore v. Chester Cnty. Child. & Youth Servs.*, No. 92-3746, 1994 WL 446880, at *1 (E.D. Pa. Aug. 18, 1994), *aff'd*, 47 F.3d 1160 (3d

Cir. 1995) (as an agency of Chester County with "no independent identity of its own," Chester County Children and Youth Services is "not a suable entity").

### 2. Claims Against Delaware County

To plead a § 1983 claim against a municipality, such as Delaware County, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quoting *Bielevicz*, 915 F.2d at 850). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part,

9

led to [the plaintiffs'] injury." *Id.* (internal quotations and alterations omitted). In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiffs "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* "Ordinarily, this requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations omitted). "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely result in the violation of constitutional rights — *i.e.*, to show that the need for more or different training was so obvious." *Id.* (internal quotations and alterations omitted). "Additionally, the identified deficiency in a [municipality's] training program must be closely related to the ultimate injury; or in other words, the deficiency in training must have actually caused the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (internal quotations and alterations omitted). "[T]he causation inquiry focuses on whether the injury could have been

avoided had the employee been trained under a program that was not deficient in the identified respect." *Id.* at 226.

Carter has not alleged a plausible basis for municipal liability against Delaware County because nothing in the Complaint suggests that any policy or custom of the county caused the constitutional violations he describes in his Complaint.  In fact, Carter alleges no factual allegations against Delaware County itself.  Accordingly, Carter has failed to articulate a plausible municipal liability claim, and the claims against Delaware County will be dismissed.

### 3. State Law Claims

Because the Court has dismissed Carter's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims he may have intended to raise.  Accordingly, the only independent basis for jurisdiction over any such state law claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  A corporation is a citizen of the state in which it was incorporated as well as where it has its principal place of

business. *See* U.S.C. § 1332(c)(1). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Carter does not allege the citizenship of the parties or specify an amount in controversy. Because the allegations do not explicitly reveal the Defendants' citizenship for purposes of plausibly establishing diversity of citizenship, Plaintiff has failed to meet his burden of demonstrating that this Court has subject matter jurisdiction over any state law tort claims he may be raising. *See Lincoln Ben. Life Co.*, 800 F.3d at 105 (citing *DaimlerChrysler Corp.*, 547 U.S. at 342 n.3); *Smith v. Albert Einstein Med. Ctr.*, No. 08-5689, 2009 WL 1674715, *4 (E.D. Pa. June 11, 2009) ("Diversity jurisdiction requires complete diversity between the parties. . . . [N]o single Plaintiff may be a citizen of the same state as any single Defendant.") (citations omitted). Accordingly, any state law claims will be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Carter leave to proceed *in forma pauperis* and dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Stevens is dismissed without prejudice as a named Plaintiff in this case, and all claims asserted on her behalf and on behalf of L.K.C. are dismissed without prejudice. Carter's claims against CYS will be dismissed with prejudice and his claims against Delaware County will be dismissed without prejudice. The Court will grant Carter leave to file an amended complaint in the event

he can cure the defects the Court has identified in his claims against Delaware County. An appropriate Order follows, which provides further instruction as to amendment.

                    **BY THE COURT:**

                    *[signature]*

                    **MIA R. PEREZ, J.**